**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| HONG KONG HARBOUR COMPANY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 26-04877 |

**COMPLAINT**

1. Plaintiff Hong Kong Harbour Company Limited ("HKH" or "Plaintiff") by and through its counsel hereby alleges and states as follows:

**ADMINISTRATIVE DETERMINATION TO BE REVIEWED**

2. This action is brought pursuant to 28 U.S.C. § 1581(c). Plaintiff contests the final scope ruling issued by the U.S. Department of Commerce ("Commerce") concerning the antidumping and countervailing duty orders of common alloy aluminum sheet from the People's Republic of China, Case Nos. A-570-073 and C-570-074. *See* Memorandum from Robert Hedberg, International Trade Compliance Analyst, Office of Antidumping and Countervailing Duty Operations, through Erin Kearney, Acting Director, Office VI, Antidumping and Countervailing Duty Operations, to Scot Fullerton, Acting Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, RE: Antidumping and Countervailing Duty Orders on Common Alloy Aluminum Sheet from the People's Republic of China; Final Scope Ruling Determination: HKH Aluminum Composite Panel (October 2, 2026) ("Final Scope Ruling")

**JURISDICTION**

3. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Section 516A(a)(2)(A)(ii) and (B)(vi) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(A)(ii) and (B)(vi).

**PARTIES AND STANDING**

4. Plaintiff is an importer of subject merchandise, and therefore, is an interested party within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A) and 28 U.S.C. § 2631(k)(1).

5. Defendant is the United States of America, acting by and through the U.S. Department of Commerce.

**TIMELINESS OF THE ACTION**

6. Plaintiff commenced this action by filing a Summons and Complaint on October 30, 2026, within 30 days after Commerce mailed its Final Scope Ruling. See Memorandum from Robert Hedberg, Analyst, Office of Policy, AD/CVD Operations, Office VI, SUBJECT: Certified Mail Documentation for Transmitting Final Scope Ruling (October 27, 2025). The Summons and Complaint are, therefore, timely filed pursuant to 19 U.S.C.§ 1516a(a)(2)(A)(ii) and Rules 3(a)(2) and 6(a) of this Court.

**STATEMENT OF FACTS**

7. On February 8, 2019, Commerce published the antidumping and countervailing duty orders on common alloy aluminum sheet from the People's Republic of China. *See Common Alloy Aluminum Sheet From the People's Republic of China: Antidumping Duty Order*, 84 Fed. Reg. 2,813 (Feb. 8, 2019); *Common Alloy Aluminum Sheet from the People's Republic of*

*China: Countervailing Duty Order*, 84 FR 2157 (Feb. 6, 2019) (the "*Orders*"). The scope of the *Orders* is as follows:

> The merchandise covered by this order is aluminum common alloy sheet (common alloy sheet), which is a flat-rolled aluminum product having a thickness of 6.3 mm or less, but greater than 0.2 mm, in coils or cut-to-length, regardless of width. Common alloy sheet within the scope of this order includes both not clad aluminum sheet, as well as multi-alloy, clad aluminum sheet. With respect to not clad aluminum sheet, common alloy sheet is manufactured from a 1XXX-, 3XXX-, or 5XXX-series alloy as designated by the Aluminum Association. With respect to multi-alloy, clad aluminum sheet, common alloy sheet is produced from a 3XXX-series core, to which cladding layers are applied to either one or both sides of the core.
>
> Common alloy sheet may be made to ASTM specification B209–14, but can also be made to other specifications. Regardless of specification, however, all common alloy sheet meeting the scope description is included in the scope. Subject merchandise includes common alloy sheet that has been further processed in a third country, including but not limited to annealing, tempering, painting, varnishing, trimming, cutting, punching, and/or slitting, or any other processing that would not otherwise remove the merchandise from the scope of the order if performed in the country of manufacture of the common alloy sheet.
>
> Excluded from the scope of this order is aluminum can stock, which is suitable for use in the manufacture of aluminum beverage cans, lids of such cans, or tabs used to open such cans. Aluminum can stock is produced to gauges that range from 0.200 mm to 0.292 mm, and has an H–19, H–41, H–48, or H–391 temper. In addition, aluminum can stock has a lubricant applied to the flat surfaces of the can stock to facilitate its movement through machines used in the manufacture of beverage cans. Aluminum can stock is properly classified under Harmonized Tariff Schedule of the United States (HTSUS) subheadings 7606.12.3045 and 7606.12.3055.
>
> Where the nominal and actual measurements vary, a product is within the scope if application of either the nominal or actual measurement would place it within the scope based on the definitions set for the above.
>
> Common alloy sheet is currently classifiable under HTSUS subheadings 7606.11.3060, 7606.11.6000, 7606.12.3090, 7606.12.6000, 7606.91.3090, 7606.91.6080, 7606.92.3090, and 7606.92.6080. Further, merchandise that falls within the scope of this order may also be entered into the United States under HTSUS subheadings 7606.11.3030, 7606.12.3030, 7606.91.3060, 7606.91.6040, 7606.92.3060, 7606.92.6040, 7607.11.9090. Although the HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of this order is dispositive.[1]

---

[1] *See Common Alloy Aluminum Sheet From the People's Republic of China: Antidumping Duty Order*, 84 Fed. Reg. 2,813 (Feb. 8, 2019); *Common Alloy Aluminum Sheet from the People's Republic of China: Countervailing Duty Order*, 84 FR 2157 (Feb. 6, 2019) (the "*Orders*").

8. On August 28, 20025, HKH filed a scope ruling application under 19 C.F.R. § 351.225, requesting a determination that HKH's Aluminum Composite Panels ("ACP") manufactured in China are outside the scope of the antidumping and countervailing duty orders on Common Alloy Aluminum Sheet From the People's Republic of China. *See* Letter from Morris, Manning & Martin, "Common Alloy Aluminum Sheet From the People's Republic of China, Case Nos. A-570-073, C-570-074: HKH's Scope Ruling Application" (Aug. 28, 2025) ("Scope Ruling Application").

9. In its Scope Ruling Application, HKH provided substantial evidence that the HKH ACPs covered by its Scope Ruling Application are not covered by the scope of the *Orders*. Specifically, HKH explained that the plain language of the *Orders* exempts HKH's aluminum composite panels because the ACPs are unitary articles of commerce consisting of plastic cores covered with aluminum sheets. HKH noted that, according to the U.S. Court of International Trade ("CIT"), unitary articles of commerce are those whose constituent parts are not "reasonably separable." And, when considering a unitary article of commerce, "the entire product, not just a component part, must be defined as {subject of the orders} to fall within the scope of the orders." HKH further explained that the plain language of the *Orders* explicitly states that aluminum sheet is a "flat-rolled aluminum product," whereas HKH's aluminum composite panels are produced in a way that does not use flat rolling. *Id.* Further, the plain language of the *Order*s in question describes that multi-alloy clad aluminum sheet is "produced from a 3XXX-series {aluminum} core, to which cladding layers are applied." However, HKH's aluminum composite panels are constructed from an LDPE core rather than an aluminum core. HKH further argued that Commerce's interpretation of the further processing clause of the *Orders*, used in the scope decision of similar aluminum composite panels imported by K-Tex

LLC (K-Tex), was erroneous. Specifically, in that ruling, Commerce claimed that K-Tex's aluminum composite panels may be subject to the *Orders* as further manufactured aluminum sheet and resultantly found that the plain language of the *Order*s was inadequate to determine whether K-Tex's aluminum composite panels fall within the scope. Commerce then found K-Tex's aluminum composite panels as in scope due to similarities with aluminum sheet such as physical characteristics, expectations of the ultimate user, the ultimate use of the product, the channels of trade, and advertising. HKH argued that Commerce cannot interpret further processing as without limits, meaning that the plain language of the *Orders* is in fact adequate to remove HKH's aluminum composite panels from scope.

10. On September 29, 2025, HKH's Scope Ruling Application was deemed accepted, and the scope inquiry was deemed initiated. See Memorandum to the File, " Common Alloy Aluminum Sheet from the People's Republic of China: Initiation of Scope Inquiry," (Sept. 29, 2025).

11. On January 7, 2026, the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members (collectively, the Domestic Industry) filed comments on HKH's scope application, requesting that Commerce find the aluminum composite panels imported by HKH to be within the scope of the *Orders*. *See* Domestic Industry's Letter, "Domestic Industry's Comments on Hong Kong Harbour Company Limited's Scope Ruling Application Concerning Aluminum Composite Panels," (Jan. 7, 2026 (Domestic Industry Comments). The Domestic Industry argued that Commerce has already found, in the K-Tex Scope Ruling, that aluminum composite panels from China fall within the scope of the *Orders*. As such, Commerce should find HKH's aluminum composite panels within scope. Domestic Industry further argued that in another similar proceeding, a scope inquiry on

corrosion-resistant steel (CORE) from China, Commerce found that a product produced from two sheets of CORE bonded to a polyethylene core was subject to the orders on CORE from China. Domestic Industry further averred that certain CBP rulings note that the aluminum component of aluminum composite panels "imparts the essential character of these articles," suggesting that aluminum composite panels are functionally highly similar to common alloy aluminum sheet, and that aluminum composite panels are already classified under the same HTSUS code as is common alloy aluminum sheet.

12. On January 26, 2026, HKH submitted comments rebutting the Domestic Industry's comments. HKH argued that the scope of the *Orders* explicitly states that in-scope merchandise is a fully metal, flat-rolled product, and aluminum composite panels are neither of these things. Further, Aluminum composite panels are unitary articles of commerce, meaning the entire product must fall within the scope of an order to be subject to that order. Because of these facts, the scope language itself is unambiguous and Commerce may not invoke the 19 CFR 351.225(k)(1) material or (k)(2) criteria. Accordingly, the cited the K-Tex ruling was flawed and Commerce should not rely on it to make a (k)(1) decision in this case. Further, Commerce should have included aluminum composite panels in the original *Orders* if it intended to treat them as subject merchandise. Furthermore, the CBP rulings invoked by the Domestic Industry are not reliable sources for interpreting scope language because the HTSUS subheadings are provided for convenience and customs purposes, while the *Orders* alone can be dispositive.

13. On October 2, Commerce issued its Final Scope Ruling. Commerce concluded that the ACPs imported by HKH fall within the scope of the antidumping and countervailing duty orders on common alloy aluminum sheet from China. Commerce determined that HKH's panels contain aluminum sheets that independently satisfy the physical specifications of the

orders and that bonding those sheets to a polyethylene core constitutes further processing that does not remove the resulting composite panels from the orders. Commerce reached this determination under 19 C.F.R. § 351.225(k)(1), and its prior scope ruling involving similar aluminum composite panels imported by K-Tex LLC. See Final Scope Ruling.

## STATEMENT OF CLAIMS

14. In the following respects, and for the other reasons demonstrated on the record of the administrative proceeding, Commerce's Final Scope Ruling is unsupported by substantial evidence and otherwise not in accordance with law.

### Count I

15. The allegations of paragraphs 7 through 14 are restated and incorporated herein by reference.

16. Commerce's determination that the HKH's ACPs are covered by the scope of the *Orders* is not based upon substantial evidence or otherwise in accordance with law.

### Count II

17. The allegations of paragraphs 1 through 14 are restated and incorporated herein by reference

18. Commerce's determination that the further manufacturing clause of the *Orders* applies to HKH's aluminum composite sheet is not based upon substantial evidence or otherwise in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HKH respectfully requests that this Court:

(1) hold Commerce's *Final Scope Ruling* unsupported by substantial evidence and otherwise not in accordance with law;

(2) remand the *Final Scope Ruling* to Commerce for a redetermination consistent with the judgment and findings of this Court; and

(3) provide such other relief as this Court deems appropriate.

Respectfully submitted,

/s/ Eugene Degnan

Eugene Degnan
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Jordan L. Fleischer
Edward J. Thomas III
Nicholas C. Duffey
Jenny (Shiyu) Liang
Xi (Jack) Yang

**TAFT STETTINIUS & HOLLISTER LLP**
1333 New Hampshire Ave, NW
Suite 800
Washington, D.C. 20036
(202) 216-4107

Dated: October 30, 2026

*Counsel to Hong Kong Harbour Co., Ltd*